Nichol & McGavock *v.* Steger, guardian, *et al.*

6L 393
13L 485

NICHOL & McGAVOCK *v.* THOS. M. STEGER, Guardian, AND R. M. PORTER.

MINOR. *Necessaries. Return of articles. Chancery pleading and practice.* When a minor is provided with necessaries by a parent or guardian, he nor his guardian are answerable for necessaries furnished by others; but if he still have the articles furnished, he will be compelled, in a court of equity, to pay for them or return them, but the bill must be properly framed to justify such decree.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

Nichol & McGavock *v.* Steger, guardian, *et al.*

R. L. MORRIS for complainants.

T. M. STEGER for defendants.

FREEMAN, J., delivered the opinion of the court.

This bill alleges that R. W. Porter was indebted to complainants for a set of furniture, sold by complainants, in the sum of two hundred dollars. That Porter was a minor, but married, having a wife and one child; that complainants did not know of the minority, however, when the furniture was sold. Steger is his guardian, and, as such, has the sum of $2,300 in his hands. It is charged the furniture was necessary for the comfort of the defendant Porter and his family, and suitable to his state and condition in life, and sold at reasonable value. It is further stated that Porter had sold the property and removed from the State. The prayer of the bill is for a decree for the debt against Porter, and an order to have the same paid out of the corpus of the funds in the hands of his guardian, which fund is attached.

Porter answers, by guardian *ad litem* appointed by the court, and simply says he is a minor, does not know his rights, and submits them to the protection of the court.

The question presented is, whether under this statement, together with the other facts shown in proof, complainants are entitled to a decree for their debt, either against the minor or his estate.

The facts are, that Porter, at the date of the purchase, was married to the granddaughter of James

Hickman, who was his guardian, and his then guardian swears he supplied him with such things as were necessary to him—in a word, says he supported him—and never authorized the purchase of the furniture, nor did he consider it necessary for him to have it, as he had furnished him with a set of furniture and rooms.

This being so, and we must take it as beyond question, the facts not being contested in the proof, the simple question is, whether a minor can contract a debt such as this when there is no need for the articles and he is furnished by his guardian with what he really needs, and then his estate in the hands of his guardian be appropriated to its payment.

We take it, that the answer of the infant by his guardian *ad litem,* submitting his rights to the protection of the court, is sufficient to give him the equivalent of a plea of infancy in a court of law. The court will only, in such case, decree against him where there is clear legal liability. Assuming this, we think the principles laid down in the case of *Elrod, Guardian,* v. *Myers,* 2 Head, 35, are conclusive of this case. It is there held, that all the authorities agree that if an infant is under the care of a parent or guardian, who has the means and is willing to furnish him what is actually necessary, the infant can make no binding contract for any article whatever without the consent of his legal adviser and protector. It is added, and where it is claimed that the goods furnished were necessaries, the evidence may be rebutted by proof that the infant lived under the parental roof

and was furnished with such real necessaries of life as in the judgment of his parent seemed proper. It may also be shown that he was furnished in like manner by his guardian, or that a competent allowance was made for his support, or that he was supplied with necessaries from other sources.

Under these rules, it is clear that the contract was one not binding, the fact being established that his guardian furnished him with rooms and furniture as well as support, thus sustaining his opinion that the articles were not necessaries in any fair legal sense.

It is earnestly urged, however, that the infant, in a court of equity, must return the property before he can disaffirm the contract. We need but say, that where the property is in his possession, or he still has it, so that the court can compel him so to do, he will be required to return it, as one of the terms on which the court gives relief from an improvident contract, or one made by a party under the disability of infancy. But where he has parted with the property or it is destroyed, then it is impossible to administer this equity. To hold that in such a case, when the infant is sued for the price, he might defend against his liability on the codtract, but is to be held responsible as for a tort in converting the property, would be practically to debar him from the plea of infancy as to his unauthorized contracts, unless he was prepared to place the vendor in *statu quo* by a return of the property. In other words, the disability of infancy would only amount to the right to rescind the contract, and if unable to comply with a

necessary condition to this, that is, the return of the property, then he would always be held liable for its value. He would be liable for the value, either in contract or tort, but would have the right to rescind as the extent of his rights under the disability of infancy.

We do not so understand the law. We may add, in conclusion, that the bill in this case is not framed with a view either to a recovery of the property, or its value as for a conversion.

The learned chancellor arrived at the same conclusion we have reached, after full review of authorities, which will be found in 2 Tenn. Ch. R., 328.

The result is, the decree dismissing the bill is affirmed with costs.